J-S10045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.J.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1379 MDA 2021 |

Appeal from the Decree Entered October 1, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2021-1253

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED AUGUST 24, 2022**

K.K. ("Mother") appeals from the decree involuntarily terminating her parental rights to her son, J.J.M. ("Child"), born in April 2019.  In addition, Mother's counsel has filed in this Court a petition to withdraw and accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  After careful review, we vacate the decree and remand for further proceedings consistent with this memorandum, and we deny counsel's petition to withdraw.

The orphans' court set forth the factual history of this case in its January 3, 2022 Pa.R.A.P. 1925(a) opinion:

> This case began when the [Lancaster County Children and Youth] Agency received its first report regarding the family on April 17, 2019, when Mother tested positive for marijuana during the delivery of [Child].  Mother reported to the Agency that she used

---

[*] Retired Senior Judge assigned to the Superior Court.

heroin at the beginning of her pregnancy and that she went to rehab, and that she had illicitly used Xanax during her pregnancy. The Agency closed the case as the family was meeting the Child's basic needs and Mother had obtained a valid prescription for Subutex.

The Agency received another report on June 6, 2019, with concerns for Mother's substance use. It was reported that Mother was present at a provider for her postpartum checkup and appeared to be under the influence of a substance as evidenced by her slurred speech and unsteady standing. Mother admitted to relapsing on Klonopin and Xanax and the Agency implemented a safety plan for the family on June 21, 2019. On August 14, 2019, the family was accepted for ongoing services to ensure the Child's safety and to address the substance abuse and mental health of both caregivers. On October 14, 2019, Mother began participating in the Family Alternatives Program as well as attending Addiction Recovery Services ("ARS") daily for methadone. Mother was also attending PA Counseling for substance use and mental health concerns. Mother also received psychiatric care from CSG and was given a prescription for Zoloft, which can create a false positive for benzodiazepine. Mother had been complying with the Agency's drug screens throughout the Agency's involvement. Between August 20, 2019, and November 27, 2019, Mother had tested positive for THC, and on some of the dates also tested positive for benzodiazepines, methadone, and suboxone.

On December 2, 2019, the Agency received its most recent report on the family. The household consisted of Mother and the Child. It was reported that [Child's] father [ ], died in the home of a drug overdose on December 1, 2019, and there was suspicion that Mother was under the influence of a substance as well. Mother completed a drug screen at the Lancaster Freedom Center and was positive for THC, opiates, benzodiazepines, methadone, and fentanyl. The Lancaster City Polic[e] took protective custody of [Child].

A Shelter Care Hearing was held on December 4, 2019, where the court found that to allow [Child] to remain in the home would be contrary to [Child's] welfare. Without prejudice and without admitting the allegations in the petition, Mother stipulated that the Agency had sufficient evidence to meet its burden for purposes of the Shelter Care Hearing.

Orphans' Court 1925(a) Opinion, 1/3/22, at 2-3.

The record reflects that at a January 6, 2020 adjudicatory and dispositional hearing, the orphans' court found Child to be a dependent child by clear and convincing evidence pursuant to 42 Pa. C.S. § 6302(1). Although she had been provided with notice by hand delivery, Mother did not appear at this hearing. The court approved a child permanency plan with the following goals: to improve mental health; to remain free from drugs and misuse of alcohol; to be financially stable; to obtain and maintain a home free and clear of hazards; and to maintain an ongoing commitment to Child. N.T., 1/6/20, at 11-14.

At the initial permanency review hearing, held on June 1, 2020, Mother participated by phone; the court received the Agency's recommendation that although Mother had made 'minimal' progress, she was in 'moderate' compliance with the child permanency plan, due to the cooperation she had exhibited with respect to alleviating the circumstances that led to Child's placement. N.T., 6/1/20, at 8.

On September 2, 2020, a second permanency review hearing was held. At that hearing, the court again found 'moderate' compliance with the child permanency plan, although it was reported that Mother was no longer in mental health treatment and had missed a scheduled appointment with PA Counseling due to health concerns. A Lancaster County Children & Youth Agency ("Agency") supervisor, Ruby Nolt, testified that there had been no progress on Mother's goals regarding drugs and misuse of alcohol, she had

been discharged from the Family Alternatives Program due to non-compliance, and she was at that time unemployed, homeless and living with friends. N.T., 9/2/20, at 9-10. The next permanency review hearing was held on March 1, 2021; as of that date Mother was not employed, did not have appropriate housing, and had attended only nine of the twenty-five visits scheduled with Child. N.T., 3/1/21, at 7-9.

On May 19, 2021, the Agency filed a petition to involuntarily terminate the parental rights of Mother pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), and (b).

Mother was unable to attend the next permanency review hearing on August 9, 2021 because she had been hospitalized and was then in a mental health facility; this hearing was to have been immediately followed by an initial termination of parental rights hearing. Mother did, however, participate by phone, and she indicated that she had no objection to a temporary suspension of her visitation rights given the state of her mental health and inability to even consider visits. N.T., 8/9/21, at 4.

The permanency review/termination hearing was rescheduled to September 27, 2021. Mother failed to appear at this hearing although she had been properly served. N.T., Permanency Review Hearing ("PRH"), 9/27/21, at 3. The court heard testimony from Summer Weaver, Child's Agency caseworker, who stated that since the last permanency review hearing, she had heard from Mother once, in July, when she called to cancel a scheduled visit with Child; once in August; on September 13th, when Mother

- 4 -

called; and again on September 14, 2021, when they met to discuss her child permanency plan. *Id.* at 4. Ms. Weaver reported that Mother was not currently receiving any mental health treatment and that she had been in detox at Keystone Place in Chester, Pennsylvania due to heroin use in May or June. *Id.* at 5. Ms. Weaver stated that she had attempted, unsuccessfully, to contact Mother by phone both while Mother was in a mental health hospital in Delaware and after she was discharged to Keystone Place. *Id*. at 7. Mother's last visit with Child, either in-person or virtual, was on June 29, 2021, two months earlier, and prior to that time, she had been inconsistent with her visitation. *Id*. at 6.

The orphans' court then conducted a termination of parental rights hearing, and upon its conclusion, entered its decree terminating Mother's parental rights. Decree, 10/1/21. Mother timely filed her notice of appeal and statement of matters complained of on appeal on October 22, 2021.

As noted above, Mother's counsel has filed a petition to withdraw and an *Anders* brief that identifies the following issue: "[d]id the [orphans'] court err and abuse its discretion in terminating the parental rights of Appellant Mother because the [Agency] did not prove by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S.[] §2511?" *Anders* Brief at 6. In the *Anders* brief submitted by counsel, Mother avers that she had achieved 'moderate' compliance on her child permanency plan over two review periods, and requested additional time to work on plan goals. *Id*. at 13.

When faced with an *Anders/Santiago* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. *In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014). Our Court has stated:

> To withdraw pursuant to *Anders*, counsel must:
>
> 1) Petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*In re J.D.H.*, 171 A.3d 903, 907 (Pa. Super. 2017) (citations omitted).

With respect to the third *Anders* requirement, this Court has held counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in *Santiago*:

(1)    Provide a summary of the procedural history and facts, with citations to the record;

(2)    Refer to anything in the record that counsel believes arguably supports the appeal;

(3)    Set forth counsel's conclusion that the appeal is frivolous; and

> (4)     State counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago,*** 978 A.2d at 361.

Here, Mother's counsel avers in her application to withdraw that she has determined Mother's appeal is frivolous after conducting a thorough and conscientious examination of the record.  Counsel avers she mailed Mother a letter explaining her rights and has attached a copy of the letter to the application to withdraw and ***Anders*** brief.  Her letter complies with our law, as it informs Mother that she may retain new counsel or proceed *pro se* and raise any additional arguments she deems worthy of our attention.  Her ***Anders*** brief includes a summary of the facts, procedural history of the case, one issue that could arguably support Mother's appeal, and an assessment of why that issue is frivolous, with citations to the record and relevant legal authority.

As counsel has complied substantially with ***Anders***, we review the issue presented in her brief.  We must also conduct "an independent review of the record to discern if there are any additional non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).  ***Flowers*** does not require us "to act as counsel or otherwise advocate on behalf of a party." ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).  "Rather, it requires us only to conduct a simple review of the record to ascertain if there appear on its face

to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Id*.

Our standard of review in appeals from orders terminating parental rights is deferential:

> The standard of review in termination of parental rights requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon determination of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re J.R.R.*, 229 A.3d 8, 11 (Pa. Super. 2020) (citation omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). The clear and convincing evidence standard is defined as "testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id*. (citation and internal quotation marks omitted).

Here, the orphans' court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (8), and (b). However, this Court may affirm the court's decision to terminate if we agree with its determination concerning any one subsection of Section 2511(a), as well as Section 2511(b).

*See In re B.L.W*., 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).  We focus our analysis, therefore, on Section 2511(a)(5) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

(a)     **General rule.--**The rights of a parent in regard to a child may be terminated after a petition is filed on the following grounds:

-   -   -

(5) The Child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

-   -   -

(b) **Other considerations.--**The court in termination the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(a)(8), (b).

To satisfy Section 2511(a)(8), the petitioner must show three components: (1) that the child has been removed from the care of the parent for at least 12 months; (2) that the conditions which led to the removal or

placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child. ***In re Adoption of J.N.M.***, 177 A.3d 937, 943 (Pa. Super. 2018). Unlike other subsections, Section 2511(a)(8) does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the child. ***In re M.A.B.***, 166 A.3d 434, 446 (Pa. Super. 2017). "[T]he relevant inquiry" regarding the second prong of Section 2511(a)(8) "is whether the conditions that led to the removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." ***In re I.J.***, 972 A.2d 5, 11 (Pa. Super. 2009).

Although Section 2511(a) generally focuses on the behavior of the parent, the third prong of Section 2511(a)(8) specifically "accounts for the needs of the child." ***In re C.L.G.***, 956 A.2d 999, 1008-09 (Pa. Super. 2008) (*en banc*). This Court has recognized that "the application of [Section 2511(a)(8)] may seem harsh when the parent has begun to make progress toward resolving the problems that had led to the removal of her children." ***In re Adoption of R.J.S***., 901 A.2d 502, 513 (Pa. Super. 2006).

> However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit [18] months, in which to

complete the process of either reunification or adoption for a child who has been placed in foster care.

*Id.*

Here, our review of the record confirms that the Agency presented clear and convincing evidence that the termination of Mother's parental rights was appropriate pursuant to Section 2511(a)(8). First, the orphans' court determined that nearly seventeen months had elapsed between the date the Agency had removed Child from his Mother's care, due to her substance abuse, and the date the termination of parental rights petition was filed. There is, therefore, no dispute that the Agency has satisfied Section 2511(a)(8)'s twelve-month time requirement. *See J.N.M*., 177 A.3d at 943.

Second, the Agency presented ample testimony that Mother failed to make progress towards, let alone meet, her child permanency plan goals. Notwithstanding Mother's assertions that she had, in fact, received 'moderate' compliance with her plan over two review periods, as of the date of the termination of parental rights hearing on September 27, 2021, Mother was not currently participating in any mental health treatment, although she had recently been hospitalized in a Delaware mental health hospital and discharged to Keystone Place, where she underwent detox for heroin use; she was homeless and could not be contacted unless she called her caseworker because she did not own a phone; and she had not visited Child, either virtually or in-person, since the end of June. Ms. Weaver, the caseworker, reported that she was unaware of whether Mother had resolved any of her outstanding criminal charges. N.T., PRH, 9/27/21, at 4-5. The record contains

competent evidence supporting the orphans' court's finding that there has been neither compliance nor progress by Mother and that the conditions that led to Child's removal continue to exist, despite the reasonable efforts of the Agency.

Third, the Agency has established that termination best serves the needs and welfare of Child. Child's *guardian ad litem* ("GAL") concluded that his needs and welfare would be best served by terminating Mother's parental rights in light of the fact that the conditions which led to Child's placement continue to exist more than twelve months after Child's removal: Mother has not taken the necessary steps to improve her mental health functioning, to learn good parenting skills, or to obtain housing for herself and Child. GAL's Brief at 6. Mother does not contest these conclusions or make any claim of progress, but merely asks that she be given more time to complete her goals. Although she initially exhibited a willingness to avail herself of mental health and drug addiction treatment programs, she failed to progress toward achieving any of the goals established in her child permanency plan, including employment or housing, and had only sporadic visits with Child, with no visits at all in the two months prior to the termination hearing. Regrettably, Mother has simply not demonstrated any measure of stability sufficient to support a finding that she is capable of overcoming the impediments to caring for Child despite her request for more time; accordingly, we will not disturb the trial court's determination that Mother "cannot or will not remedy these conditions within a reasonable period of time." **See** Decree, 9/27/21 at 2.

Our Court has explained the application of the second prong, Section 2511(b), as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs of the child. In **In re C.M.S**., 884 A.2d 1284, 1287 (Pa. Super 2005), this Court stated, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **Id**. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **In re K.Z.S**., 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

**In re Adoption of J.M**., 991 A.2d 321, 324 (Pa. Super. 2010). We note that "[w]hile a parent's emotional bond with her child is a major aspect of the [Section 2511(b)] best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." **In re N.A.M**., 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted). "The trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability that child might have with the foster parent." **Id**. (quoting **In re A.S**., 11 A.3d 473, 483 (Pa. Super. 2010)).

Instantly, there was ample evidence as to how Child is thriving in placement. Now three years old, Child resides in a kinship home, that of his paternal grandfather. At the September 27, 2021 termination hearing, the

Agency caseworker testified that she had observed Child in his kinship home, which is safe and in good condition; she stated that Child is well-adjusted, and that his grandfather facilitates contact with Child's extended family, takes Child to his medical appointments, and takes him to day care three times a week. N.T., 9/27/21, at 4-5. Although he is being tracked by early intervention, Child has shown no need for any services and will be enrolled in a pre-kindergarten program. *Id*. at 5. In her brief, Child's GAL asserts that it is clear that the paternal grandfather is providing love, comfort, security and stability and that Child is thriving in his home. GAL's Brief at 7. At the August 9, 2021 hearing, the orphans' court observed that Child seemed to be "a very happy, busy two-year old." N.T., 8/9/21, at 3.

Here, we find that counsel has overlooked a non-frivolous issue that necessitates a remand, as the orphans' court has failed to provide the needs and welfare analysis mandated by Section 2511(b); in fact, the court fails to mention Section 2511(b) at all in its opinion, and provides only the conclusory statement that the Agency has established that the termination of Mother's parental rights is in the best interests of Child. The orphans' court simply did not address the issue of an emotional bond, or the lack thereof, between Mother and Child at the termination hearing or in its 1925(a) opinion. *See* Orphans' Court 1925(a) Opinion, 1/2/22, at 22.[1]

---

[1] There is also no discussion of Section 2511(b) within the Agency's brief, other than the general statement that termination pursuant to that section
*(Footnote Continued Next Page)*

In sum, we agree with the orphans' court that the Agency has established through clear and convincing evidence that Mother is currently incapable of parenting Child; we find, however, that the orphans' court erred when it rendered a decision that termination serves the needs and welfare of Child with no further discussion of Child's developmental, physical, or emotion needs and no evaluation of the nature and the status of any parent-child bond. Indeed, a close examination of the record reveals no testimony by any of the parties with regard to the effect the termination might have on Child. Accordingly, we remand this matter to give the parties an opportunity to present testimony regarding the emotional bond, if any, between Mother and Child, and the effect the termination of parental rights would have on Child. Subsequent to such hearing, the orphans' court shall conduct an analysis regarding this issue as well as all other factors bearing upon the termination of Mother's parental rights.

Vacated and remanded for proceedings consistent with this decision. Petition to Withdraw denied. Jurisdiction relinquished.

---

would be in Child's best interests. Agency's Brief at 13. Child's GAL's brief offers a single statement regarding Section 2511(b), stating that "in examining the emotional needs and welfare of [Child], severing any bond that might exist between Mother and [Child] would not cause irreparable harm or be detrimental to [Child] since it is clear that resource parents provide love, comfort, security, and stability to [Child], who is thriving in their care." GAL's Brief at 7.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/24/2022