J-A17041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: K.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 521 EDA 2022 |

Appeal from the Order Entered January 25, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000285-2021

| IN THE INTEREST OF: K.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 522 EDA 2022 |

Appeal from the Decree Entered January 25, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000765-2021

BEFORE:   PANELLA, P.J., NICHOLS, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                  **FILED SEPTEMBER 13, 2022**

D.M. ("Mother") appeals from the decree involuntarily terminating her

parental rights to her child, K.M. ("Child"), born in August 2020, and the order

---

* Retired Senior Judge assigned to the Superior Court.

changing Child's permanency goal from reunification to adoption.[1]  In addition,

Michael Angelotti, Esquire, Mother's counsel ("Counsel") has filed in this Court

a petition to withdraw and an accompanying brief pursuant to ***Anders v.

California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978

A.2d 349 (Pa. 2009).  We affirm and grant the petition to withdraw.

The trial court summarized the procedural history and its findings of fact

as follows:

> On March 4, 2021, the Department of Human Services (DHS)
> received a Child Protective Services (CPS) report alleging that
> K.M. was at St. Christopher's Hospital for Children with a frontal
> brain bleed; that [Mother], had stated that the Child had fallen on
> his back on the cushioned futon he was sitting on when she
> pushed the futon back to lay it flat; that the Child's injuries were
> not consistent with Mother's explanation; and that the Child was
> being admitted to the hospital for further testing…On March 6,
> 2021, Mother called DHS and stated that she wanted to tell the
> truth.  She stated that an ironing board had hit the Child on the
> front of his head while he was sitting in his car seat.  DHS learned
> that this explanation was also not consistent with [Child's]
> injuries.
>
> On March 8, 2021, [Child] was ready for discharge from the
> hospital.  Mother identified [Child's] maternal aunt, V.B., to be
> considered as a placement resource for the Child.  DHS conducted
> clearances and a home assessment for V.B. and determined that
> she was an appropriate Caregiver for [Child].  On March 8, 2021,
> [Child] was discharged from the hospital and began residing with
> V.B., with a Safety Plan.
> ***
> DHS received a Child Protection Team Consultation Report from
> St. Christopher's Hospital for Children dated March 5, 2021.  In
> the Report, it was noted that [Child] had sustained acute bilateral

---

[1] Child's putative father's parental rights were also terminated by decree issued on January 25, 2022; putative father, who lives in Georgia, did not file an appeal.

subdural hemorrhages, a left front hemorrhagic contusion, retinal hemorrhages, bruising on his left eyelid, and four hypopigmented scars on his lower extremities. It was reported that Mother's account of the cause of [Child's] injuries would not account for widespread subdural bleeding and retinal hemorrhages; that at that time, [Child's] injuries appeared to be consistent with non-accidental trauma, specifically abusive head trauma; that neither [Child] scratching himself nor hitting himself with a toy would cause his eye bruising; and that the scars on his lower extremities could not have been caused by scratching himself.

DHS has determined that there was a sufficient basis to find that aggravated circumstances exist pursuant to 42 Pa.C.S. § 6302 (aggravated circumstances (2)).

Trial Court Opinion ("TCO") at 2-4 (citations to record omitted).

Following an April 20, 2021 hearing, Child was adjudicated dependent; legal custody was transferred to DHS and Child was placed in kinship care, with permitted weekly supervised visits with Mother. On May 17, 2021, Mother was arrested and charged, *inter alia*, with aggravated assault-attempts to cause serious bodily injury or causes injury with extreme indifference. On May 20, 2021, at a meeting Mother did not attend, the Community Umbrella Agency ("CUA") established a Single Case Plan ("SCP"); the goal identified for Child was "Return to Parent" and Mother's objectives were set forth in the SCP as: (1) be available to provide ongoing care for Child; (2) enhance parenting skills, knowledge, and motivation; (3) maintain stable behavioral health; (4) have safe, suitable living conditions for Child; and (5) maintain a healthy relationship with Child. **See** DHS Petition for Involuntary Termination of Parental Rights, 12/20/21, Exhibit A, Statement of Facts.

After a Permanency Review hearing in June 2021, the trial court found Child to be a victim of child abuse inflicted by Mother, with clear and convincing evidence to establish the existence of aggravated circumstances. Permanency Review Order, 6/2/21; Aggravated Circumstances Order, 6/2/21. Mother was released from jail in August, 2021 and on October 12, 2021, the trial court held another Permanency Review hearing, which Mother did not attend; at that time, in reliance upon a criminal stay-away order, the court ruled that visits between Mother and Child would be suspended pending further court order. Permanency Review Order, 10/12/21. On October 28, 2021, the trial court held another case plan meeting, which Mother attended; there, in addition to re-communicating the SCP objectives to Mother, Mother was referred to the Achieving Reunification Center ("ARC") to help her meet her objectives and instructed to call her caseworker to schedule a home evaluation.

On December 20, 2021, DHS filed a petition to terminate Mother's parental rights as well as a petition to change goals from reunification to adoption. The trial court conducted a joint hearing on DHS's petitions on January 25, 2022. Faryl Bernstein, Esquire appeared as *guardian ad litem* for Child. DHS presented the testimony of Destiny Vargas-Febles, who was a case manager from CUA assigned by DHS to work with the family. Mother testified on her own behalf. As reported by the CUA caseworker at the joint hearing, Mother failed to complete any of her SCP objectives, did not complete any ARC programs, and failed to make herself available for a visit to her home

by the social worker. N.T. at 13-15. At the conclusion of the hearing, the trial court announced its decision to grant DHS's petition to terminate parental rights under all subsections pleaded and to change Child's permanency goal from reunification to adoption. N.T. at 40-41. On February 19, 2022, Mother, by Counsel, filed a timely notice of appeal and statement of matters complained of on appeal regarding each of the orders issued and the trial court issued its Pa.R.A.P. 1925(a) opinion on March 22, 2022. Counsel then filed a petition to withdraw and an accompanying **Anders** brief in this Court.[2] Mother has not filed a response.

We begin by addressing the petition to withdraw and **Anders** brief filed by Counsel.[3] To withdraw pursuant to **Anders,** counsel must:

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the [**Anders**] brief to the [appellant]; and (3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.
>
> With respect to the third requirement of **Anders**, that counsel must inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

---

[2] These matters were consolidated *sua sponte* on April 4, 2022. Neither Child's *guardian ad litem* nor DHS has filed a brief.

[3] When faced with a purported **Anders** brief, we may not review the merits of the underlying issues without first passing on counsel's request to withdraw. **Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005).

*In re J.D.H.*, 171 A.3d 903, 907 (Pa. Super. 2017) (citations omitted). Additionally, counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in *Santiago*:

> (1)    provide a summary of the procedural history and facts, with citations to the record;
>
> (2)    refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3)    set forth counsel's conclusion that the appeal is frivolous; and
>
> (4)    state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*In re Adoption of M.C.F.*, 230 A.3d 1217, 1219 (Pa. Super. 2020) (citation omitted).  Once we have received an *Anders* brief and concluded that counsel has complied with these requirements, we must then undertake an independent examination of the record to determine whether the appeal is wholly frivolous; our review is not limited to those issues identified and discussed by counsel, but must extend to additional, non-frivolous issues that counsel may have overlooked.  *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015).

Instantly, Counsel has filed a petition to withdraw that states that he (1) has conscientiously reviewed the record and despite Mother's expressed desire, has determined that the appeal is frivolous; (2) served Mother with a

copy of his petition to withdraw, and the **Anders/Santiago** brief; and (3) served a letter advising Mother of her rights. We note that Counsel's April 1, 2022 letter to Mother contains a typographical error which omits the word "raise" in the second paragraph as follows: "you have the right to retain private counsel, or *pro se*, [raise] any additional arguments that you deem worthy of the court's attention." However, paragraph eight of Counsel's petition to withdraw, served to Mother, duly advises of her right to "raise *pro se* additional arguments that she deems worthy of the court's attention," and we do not therefore find this error to be a substantial defect.

Additionally, our review of Counsel's **Anders/Santiago** brief reveals that he has provided a summary of the essential facts and procedural history of the case, two issues that arguably support Mother's appeal, and an assessment of why those issues are frivolous, with citations to the record and relevant legal authority. For these reasons, we conclude that Counsel has substantially complied with the technical requirements set forth above, and we proceed to an independent review of his assessment that there was sufficient evidence to terminate Mother's parental rights and change Child's permanency goal from reunification to adoption.

Our standard of review in appeals from orders terminating parental rights is deferential:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law

- 7 -

> or abused its discretion. A decision may be reversed for an abuse of discretion only upon determination of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re J.R.R.*, 229 A.3d 8, 11 (Pa. Super. 2020) (citation omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). The clear and convincing evidence standard is defined as "testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id*. (citation and internal quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act. "Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination." *In re Adoption of C.M*., 255 A.3d 343, 359 (Pa. 2021); 23 Pa.C.S. § 2511(a)(1)-(11). In evaluating whether the petitioner proved grounds under subsection 2511(a), the trial court must focus on the parent's conduct and avoid using a "balancing or best interest approach." *Interest of L.W.*, 267 A.3d 517, 524 n.6 (Pa. Super. 2021). If the trial court determines the petitioner established grounds for termination under subsection 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection (b), which focuses on the child's needs and welfare. *In re*

***T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." ***In re L.M***., 923 A.2d 505, 511 (Pa. Super. 2007).

Initially, we note that both DHS and the trial court included as grounds for termination, subsections (a)(1), (2), (5), and (8), as well as subsection (b). Petition for Involuntary Termination of Parental Rights at 3; TCO at 17. However, and as correctly noted in the ***Anders*** brief, the requirements of subsection (a)(8) were unquestionably not met here, where the first element of the subsection, i.e., that the child must have been removed from the parent by an order of court for *twelve* months, was clearly not satisfied. ***See Anders*** Brief at 31. Instantly, Child was removed from Mother's care when he was adjudicated dependent in April 2021, less than twelve months before the termination petition was filed, in December 2021. Nevertheless, this Court need only agree with any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm the termination of parental rights. ***See In re B.L.W***., 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Here, we analyze the trial court's decision pursuant to Section 2511(a)(5) and (b) of the Adoption Act. To satisfy the requirements of Section 2511(a)(5), the moving party must produce clear and convincing evidence regarding the following elements: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to the child's

removal or placement continue to exist; (3) the parent cannot and will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the parent are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child. 23 Pa.C.S. § 2511(a)(5); *In re Adoption of M.E.P.*, 825 A.2d 1266, 1273-74 (Pa. Super. 2003).

Here, our review of the record confirms that DHS presented clear and convincing evidence that the termination of Mother's parental rights was appropriate pursuant to Section 2511(a)(5). First, there is no dispute that Child was removed from Mother's care immediately upon his discharge from the hospital on March 8, 2021, adjudicated dependent on April 20, 2021, and that he remained in kinship care at the time the Petition for Involuntary Termination of Parental Rights was filed nine months later, on December 20, 2021. See TCO at 3, 7.

In addition, DHS presented ample testimony that despite its efforts, Mother has failed to act on any opportunity to obtain the services to which she was referred or to complete the SCP objectives that had been established by CUA. As noted by the trial court:

> Ms. Vargas-Febles [the CUA caseworker] testified another SCP meeting was held on 10/28/2021 and Mother was present. Mother's objectives have remained the same throughout the case: parenting class, mental health treatment, employment, and housing. Various referrals were made for Mother to ARC for parenting classes, however, on 5/12/21, Mother told [Ms. Vargas-

Febles] she was attending parenting classes at Turning Points for Children. Mother did not provide documentation of her enrollment and has yet to provide documentation of the completion of parenting classes and that remains as an outstanding objective for Mother. Regarding counseling and mental health, Mother was referred to BHS and had an evaluation and intake appointment at JFK for behavioral health, but the agency only had a record of Mother attending in April of 2021. Since that time, Ms. Vargas-Febles testified no other information has been provided by Mother regarding participation in mental health and counseling. Therefore, that is also an outstanding objective.

Regarding employment, Ms. Vargas-Febles testified she has not received a verification or pay stub to show that Mother was employed. Regarding housing, before Mother was arrested, [Ms. Vargas-Pebles] visited her at the Shelter at 413 Master Street, Philadelphia, PA. On 10/28/21 Mother disclosed that she now lives at 1418 Church Street, Philadelphia PA 19124. Ms. Vargas-Febles noted that she attempted pop-up visit at that address, however, she was not successful. At the present time, Mother has not complied with any SCP objectives.

TCO at 11-12 (citations to notes of testimony omitted).

Of particular concern to the trial court was the fact, as testified to by Ms. Vargas-Febles, that Mother has never taken responsibility for Child's injuries and her role in the incident that resulted in his removal from her care. TCO at 12. As previously stated, Mother initially reported to DHS and to the healthcare workers at St. Christopher's Hospital that Child had fallen off a futon; later, she averred that an ironing board hit Child in the head. As indicated by Dr. Norelle Kristin Atkinson, in the Child Protection Team Consultation Report ("Consultation Report"), the minor injury history provided by Mother would not account for Child's widespread subdural bleeding and retinal hemorrhages. Consultation Report at 9. Dr. Atkinson further noted that bruising to Child's left eye, which Mother explained, first, as having been

- 11 -

caused by Child scratching himself, and later, as having been caused by Child hitting himself in the eye with a toy, could not have been caused a Child of his age and developmental ability. *Id*. at 10. Also concerning to Dr. Atkinson were hypopigmented scars to Child's lower extremities that were patterned, or linear and which, in her opinion, could not have resulted from Child's actions to himself. *Id*. Ms. Vargas-Febles stated that given Mother's continuing inability to take responsibility for Child's injuries coupled with her non-compliance with SCP objectives, she did not believe that Child would be safe in Mother's care. N.T. at 17. We can discern no basis in the record to disturb the trial court's determination that the conditions which led to Child's removal continue to exist and that termination of Mother's parental rights best serve his needs and welfare. Ms. Vargas-Febles testified that Child looks to his kinship provider, whom Child calls "mommy," for love, support, and care. *Id.* at 20, 23, 37.

Mother testified at the hearing, asserting that she did want to have her parental rights terminated; she further stated, however, that "I know in my heart [Child] is used to [his kinship care provider], and I don't want to mess that up" and that if Child is "best being raised by [his kinship care provider]" she will "openly and willingly allow her to adopt [Child]." *Id*. at 37-38. We conclude that the trial court properly found that the termination of Mother's parental rights best served Child's needs and welfare pursuant to Section 2511(a)(5). Accordingly, our review confirms that an appeal challenging the

trial court's ruling under Section 2511(a)(5) lacks any basis in the facts or law and would, therefore, be frivolous.

We next consider whether the termination was proper under Section 2511(b), which focuses on whether "termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). As we have explained, "Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered" as part of our analysis. *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008).

> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

In its opinion, the trial court acknowledged that it had carefully examined both the tangible and intangible dimension of the needs and welfare of Child. TCO at 15. The trial court determined that it had adequate evidence of the status of the parent-child bond to determine whether Mother's parental rights would destroy a necessary and beneficial relationship, and concluded that there was no such necessary and beneficial relationship. *Id*. The CUA

caseworker testified that Child is happy and thriving in foster care, and developmentally on track. N.T. at 19. Ms. Vargas-Febles stated that Mother did not make efforts to have any type of relationship with Child or to be involved in his life; she allowed that notwithstanding the fact that Mother was subject to a stay-away order and could not visit Child, she never called her to ask how he was doing or sent cards or gifts, even after she was no longer incarcerated. *Id*. at 18. We find no abuse of discretion in the trial court's decision, and agree with Mother's counsel that a challenge to the sufficiency of evidence to support its decision to terminate Mother's parental rights pursuant to subsections 2511(a) and (b) is frivolous.

Finally, Mother appeals the order changing Child's placement goal from reunification to adoption. We review decisions changing a placement goal for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). In making such a goal change, the trial court must determine the matters set forth at 42 Pa.C.S. § 6351(f) of the Juvenile Act, including the appropriateness, feasibility, and likelihood of attaining the current goal, the parent's progress toward alleviating the circumstances that necessitated the original placement, and the child's safety. *In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008). The best interests of the child, and not the interests of the parent, must guide the trial court. *In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011). Here, the trial court ably set forth its rationale for the goal change:

Adoption has been clearly established as the appropriate goal in the best interest of this Child. This Court heard credible, persuasive testimony that [Child], who is eighteen months old, is bonded to his pre-adoptive caregiver, [], and that it would be in his best interest to be adopted. The Court finds the record sustains the factual findings and legal conclusions regarding the Child's current placement, Mother's lack of compliance, and lack of willingness to gain the skills to be a responsible parent for this Child. Most importantly, this Court must act to fulfill [Child's] right to have proper parenting and fulfillment of his potential in a permanent, healthy, safe environment. Here the totality of the evidence supports this [c]ourt's conclusion that termination of Mother's parental rights and a goal of adoption is in [Child's] best interests.

TCO at 16. We find no non-frivolous issues to support Mother's appeal from the order changing Child's placement goal from reunification to adoption and discern no abuse of discretion.

As our independent review of the record reveals no non-frivolous issues, we affirm the decree terminating Mother's parental rights and the order changing Child's permanency goal from reunification to adoption, and grant counsel's petition to withdraw.

Decree affirmed. Goal change order affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2022

- 15 -