J-S02017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.B.A.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2417 EDA 2023 |

Appeal from the Order Entered August 24, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000461-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: S.B.A.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2418 EDA 2023 |

Appeal from the Decree Entered August 24, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000640-2022

BEFORE:   LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                    **FILED FEBRUARY 29, 2024**

K.D. (Father) appeals from the decree terminating his parental rights to

S.B.A.I.D. (Child), a daughter born in September 2020, and the order

---

* Former Justice specially assigned to the Superior Court.

changing Child's permanency goal from reunification to adoption.[1,2]  Father's appointed counsel, Deborah A. Fegan, Esquire (Counsel), has filed a petition to withdraw as counsel and an accompanying **Anders** brief.[3]  We grant Counsel's petition to withdraw and affirm the juvenile court's decree and order.

Father and Mother have nine children together.[4]  Mother's oldest child—Father's stepchild (Stepchild)—also resided with the family.  The Philadelphia Department of Human Services (DHS) first became involved with the family in 2016.  **See generally** Petition for Involuntary Termination, 11/25/22, Exhibit A (Statement of Facts), at 1 (unnumbered).  Throughout the course of DHS's involvement, all of the children had been placed under DHS supervision, and the Community Umbrella Agency (CUA) provided services to the family.  **See** N.T., 8/24/23, at 116.

---

[1] This Court *sua sponte* consolidated Father's appeals.

[2] The juvenile court also terminated the parental rights of Child's mother, D.S. (Mother), on the same date.  Mother's appeals from the termination and goal change are before this panel and docketed at 2414 EDA 2023 and 2415 EDA 2023.

[3] **See Anders v. California**, 386 U.S. 738 (1967); **see also In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (explaining that the **Anders** procedure for withdrawal of court-appointed counsel has been extended to appeals involving termination of parental rights).

[4] We note that in the **Anders** brief, counsel explains seven of Child's siblings are Father's biological children; Father signed an acknowledgement of paternity as to the eighth child he and Mother share.  **Anders** Brief at ix.

On April 15, 2021, DHS received a report that Mother had given birth to Child without informing DHS or CUA. *See id.* at 115. At that time, Mother's nine other children were in DHS's custody with active dependency petitions. *See* Motion to Compel Cooperation, 4/30/21. DHS visited the family's home several times, but no one answered the door. *See id.* On April 22, 2021, Father called DHS, indicating that he and Mother would speak to DHS over the telephone, but refusing a home visit. *See id.* He also denied that the couple had a new baby. *See id.* Because the family refused to allow DHS to visit the family's home, on April 30, 2021, DHS filed a motion to compel cooperation with the child protective services investigation. *See id.* DHS also cited concerns about Father's active criminal matter, which named Mother's oldest child (Father's stepchild) as the victim. *See id.* The juvenile court granted the motion to compel. The court dismissed the motion after Child was deemed safe.

On July 7, 2021, DHS filed a dependency petition for Child. DHS averred that when DHS workers arrived for a visit in June 2021, the family did not answer the door. DHS also received allegations that Mother and Father had left the state with Child.

Ultimately, on August 19, 2021, U.S. Marshals located Mother, Father, and Child in New Jersey. *See* N.T., 8/24/23, at 43, 117. Mother and Father

were arrested at that time.[5] That same day, DHS obtained an order for protective custody, and Child was placed in foster care. The juvenile court lifted the order for protective custody after a shelter care hearing on August 20, 2021, but Child remained in DHS care. DHS filed another dependency petition on August 27, 2021. Following a hearing, the juvenile court adjudicated Child dependent on November 17, 2021. The court emphasized that Mother and Father were both incarcerated at that time. Order of Adjudication, 11/17/21. Further, the juvenile court took judicial notice of a finding of child abuse as to Father during a September 4, 2019, goal change and termination hearing for the other children. *See id.*[6] After that time, Child remained in foster care, and her permanency goal was reunification with Mother and Father.[7]

On November 25, 2022, DHS filed a petition to involuntarily terminate Mother's and Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

---

[5] Father was arrested pursuant to a bench warrant, after he failed to appear for a hearing related to criminal charges for his physical and sexual abuse of Stepchild.

[6] The September 4, 2019, hearing transcripts are included with Child's dependency order in the certified record. However, the transcripts are not designated as an exhibit or otherwise numbered as an attachment.

[7] Father's parental rights as to the parties' eight other children were involuntarily terminated on August 11, 2022.

On December 14, 2022, at the dependency docket, the juvenile court determined aggravated circumstances existed against Mother and Father. The court directed that DHS was not required to continue with efforts to reunify Child with Mother and Father. *See* Juvenile Court Opinion, 2/9/23, at 1-2.

Notably, on March 3, 2023, Father was convicted of criminal charges stemming from his abuse of two of Child's minor siblings (Stepchild and one of Father's biological children).[8] Based on Father's convictions, DHS filed an amended petition on March 15, 2023, to include Section 2511(a)(9) and (10) as grounds for termination.

The juvenile court held a termination and goal change hearing on August 24, 2023. The court heard testimony from Jelea McNeil, the CUA caseworker who worked with the family since 2020; and Shawn Jackson, the CUA case manager for Child. Father appeared via video conference, and his interests were represented by Counsel. Child was represented by her guardian *ad litem*

_____

[8] At trial court docket 0654-2020, a jury convicted Father of aggravated assault; corruption of minors; unlawful contact with a minor – sexual offenses; endangering the welfare of children – parent or guardian; indecent exposure; and indecent assault – forcible compulsion. At trial court docket 8422-2021, a jury convicted Father of aggravated assault – victim less than 13 years, and defendant 18 years or older; endangering the welfare of children – parent or guardian; and possession of an instrument of crime. At trial court docket 8424-2021, a jury convicted Father of aggravated assault – victim less than 13 years, and defendant 18 years or older; conspiracy; endangering the welfare of children – parent or guardian; corruption of minors; and possession of an instrument of crime.

(GAL).[9] DHS also offered as exhibits Father's criminal docket sheets, which detailed Father's convictions and sentence at each docket. N.T., 8/24/23, DHS Exhibit 5A, 5B, and 5C. Significantly, each sentencing order includes a stay-away order regarding the respective victims (Child's siblings) and **prohibits Father from having unsupervised contact with minors upon his release from incarceration.** *See id.* Further, at 0654-2020, **Father is subject to 25 years of sexual offender registration.** At the close of the hearing, the juvenile court denied DHS's petition to terminate Father's parental rights under Section 2511(a)(1). The court otherwise granted the petition and terminated Father's parental rights to Child under Section 2511(a)(2), (5), (8), (9), (10), and (b). In a separate order, the juvenile court changed Child's permanency goal to adoption.

Father filed timely notices of appeal from the termination decree and goal change order, as well as a contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal. The juvenile court filed a Pa.R.A.P. 1925(a) opinion.

Before reaching the substantive merits of this appeal, we address Counsel's petition to withdraw. *See In re S.M.B.*, 856 A.2d at 1237 (stating that "this Court may not review the merits of the underlying issues until we

_____

[9] Child's GAL stated there was no conflict between Child's legal and best interests. N.T., 8/24/23, at 40.

- 6 -

address counsel's request to withdraw").  To withdraw from representation under **Anders**, counsel must

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the **Anders** brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.

**In re J.D.H.**, 171 A.3d 903, 907 (Pa. Super. 2017) (citation and brackets omitted).  Counsel must also "attach to [a] petition to withdraw a copy of the letter sent to the[] client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

> Additionally, a proper **Anders** brief must

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009).

Instantly, Counsel filed a petition to withdraw and an **Anders** brief asserting that Father's appeal lacks merit and is frivolous.  **See** Petition to Withdraw, 11/27/23, ¶ 3.  In her petition, Counsel confirmed she conducted a conscientious review of the record.  **Id.**  Counsel included her letter to Father, which properly advised Father of his right to retain new counsel or proceed *pro se* to raise any other issues he deems worthy of this Court's

attention. *See id.*, attach. Counsel also provided Father with a copy of the *Anders* brief. Father filed a *pro se* answer to Counsel's petition to withdraw, which we address *infra*.

Counsel's *Anders* brief (a) summarizes the procedural history and facts of the case with citations to the record; (b) identifies several issues that could arguably support Father's appeal; and (c) explains why the appeal is frivolous. Accordingly, Counsel has complied with the requirements of *Anders* and *Santiago*. Thus, we consider the substantive issues raised in the *Anders* brief. *See Commonwealth v. Bennett*, 124 A.3d 327, 333 (Pa. Super. 2015) (discussing procedure where counsel files an *Anders* brief and appellant files a *pro se* response and stating this Court should first consider the *Anders* brief).

The *Anders* brief raises the following issues:

I. Whether the [juvenile] court abused its discretion when it involuntarily terminated [Father's] parental rights under the Adoption Act[,] 23 Pa.C.S.A. § 2511(a)(2), (a)(5), (a)(8), (a)(9), and (a)(10)?

II. Whether the [juvenile] court abused its discretion when it [in]voluntarily terminated [Father's] rights pursuant to [Section] 2511(b)?

III. Whether the [juvenile] court abused its discretion when it changed [Child's] goal to adoption?

IV. Whether the [juvenile] court violated [Father's] 14th Amendment due process rights when it involuntarily terminated [Father's] parental rights over the following … objections:

(a) the [juvenile] court lacked jurisdiction over the termination procedure;

- 8 -

(b) the [juvenile] court denied [Father's] renewed oral motion for recusal;

(c) the [juvenile] court denied [Father's] renewed oral motion to proceed *pro se*;

(d) [Father] was not served with the amended petition for termination and goal change;

(e) conducting the termination/goal change of both Mother and Father separately;

(f) [Father] was not in receipt of the exhibits marked and moved into the record at his trial;

(g) counsel for [Father] was ineffective.

V. Whether Counsel … met the requirements of **Anders** … and … **Santiago**?

**Anders** Brief at vii (some capitalization modified; issues reordered).[10]

We address Father's first and second claims together. Father argues DHS failed to establish grounds for termination under 23 Pa.C.S.A. § 2511(a)(2), (5), (8), (9), and (10). **Anders** Brief at 2-7. Father also challenges termination under 23 Pa.C.S.A. § 2511(b). **Anders** Brief at 7-9.

In considering Father's claims, we recognize

appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. Where the orphans' court's factual findings are supported by the evidence,

_____

[10] As we have reviewed Counsel's petition to withdraw and compliance with the **Anders** requirements, we need not separately address Father's final claim.

- 9 -

an appellate court may not disturb the orphans' court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, the orphans' court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which provides for a bifurcated analysis. First, the juvenile court "must focus on the parent's conduct" relative to the enumerated ground for termination set forth in 23 Pa.C.S.A. § 2511(a)(1)-(11). *Id.* at 830. If the court finds grounds for termination under any subsection of Section 2511(a), it must then assess the evidence relative to the child's needs and welfare under Section 2511(b), "giving primary consideration to the developmental,

- 10 -

physical and emotional needs and welfare of the child." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Here, the juvenile court terminated Father's parental rights to Child under Section 2511(a)(2), (5), (8), (9), (10), and (b). We address Father's termination under subsection 2511(a)(9), which provides, in relevant part:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (9) The parent has been convicted of one of the following in which the victim was a child of the parent:
>
> ….
>
> (ii) a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault)

23 Pa.C.S.A. § 2511(a)(9)(ii). "By its plain language, the Adoption Act only requires the petitioner to introduce proof of the parent's **conviction**, not proof of the facts underlying the parent's guilt." *Interest of M.E.*, 283 A.3d at 831 (emphasis added).

During the termination hearing, DHS introduced certified copies of Father's convictions at 0624-2020, 8422-2021, and 8424-2021. *See* N.T., 8/24/23, at 108-09 (offering DHS Exhibits 5A, 5B, and 5C). The convictions arose from Father's aggravated assault of Stepchild and another of his minor children. *See* N.T., 8/24/23, at 121; *see also* DHS Exhibit 5A (Father's conviction and sentence at 0654-2020, including a conviction of aggravated

assault, 18 Pa.C.S.A. § 2702); DHS Exhibit 5B (Father's conviction and sentence at 8422-2021, including a conviction of aggravated assault, 18 Pa.C.S.A. § 2702(a)(9)); and DHS Exhibit 5C (Father's conviction and sentence at 8424-2021, including a conviction of aggravated assault, 18 Pa.C.S.A. § 2702(a)(9)).  Counsel for DHS explained that at each docket, Father was sentenced to 10 to 20 years in prison for aggravated assault.  *See* N.T., 8/24/23, at 109-10.  Because the trial court imposed consecutive sentences, Father's minimum prison term is 30 to 60 years.[11]  *See id.* at 121. Counsel for DHS emphasized that the sentencing orders prohibited Father from having unsupervised contact with minors.  *See id.* at 121.  Moreover, Father's conviction at 0654-2020 requires him to register as a sexual offender for 25 years after his release from incarceration.  *See id.* at 109-110. Accordingly, we conclude the juvenile court did not abuse its discretion in finding DHS established the statutory grounds for termination under Section 2511(9)(ii) by clear and convincing evidence.

We now turn to Section 2511(b), which provides:

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights

---

[11] From our review of the certified docket sheets at 0654-2020, it appears the trial court imposed several consecutive sentences, resulting in a longer aggregate sentence at that docket, as well as a longer aggregate sentence across the three related dockets.  However, the precise sentence is not material to our review of the instant matter.  We instead highlight Father's convictions of aggravated assault and the parties' agreement that he faces *at least* 30 to 60 years in prison.

- 12 -

of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. …

23 Pa.C.S.A. § 2511(b).

"The plain language of Section 2511(b) clearly mandates that, in assessing the petition to terminate parental rights, the primary consideration must be the child's developmental, physical and emotional needs and welfare." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (quotation marks omitted). This Court has repeatedly stated that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.W.U., Jr.*, 33 A.3d 1, 6 (Pa. Super. 2011) (citation omitted). "[T]he court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Interest of: J.R.R.*, 229 A.3d 8, 12-13 (Pa. Super. 2020) (citation and quotation marks omitted).

Regarding Child's best interest under Section 2511(b), the juvenile court stated on the record:

[Child] definitely had a good relationship with her [F]ather prior to coming into care. She had lived with [Mother and Father] for 11 months.

That being said, … in the two years that have followed since [Child] came into care, she has been in her current foster home, has had absolutely no contact with [Father,] and as such[,] any bond she had with him has evaporated over time. And CUA testified, and quite credibly so, that [Child's] current bond is with

- 13 -

her current foster parent who[ has] been taking care of her day in and day out for the last two years.

And so … this [c]ourt will terminate involuntarily [Father's] parental rights to [Child] under 2511(b) and find that there would not be any detrimental impact. [Child] is in a home that is pre-adoptive. She's there with a sibling and doing very well in that home.

N.T., 8/24/23, at 172-73. The court's opinion reiterated that "any parent-child bond developed in [] Child's first eleven (11) months of life has evaporated in the past two (2) years in which Father has had absolutely no contact with [] Child, due to his criminal stay away order." Rule 1925(a) Opinion, 10/24/23, at 3.

The record supports the juvenile court's findings. We additionally refer to the following testimony, which the juvenile court found credible. *See* N.T., 8/24/23, at 172 (crediting the testimony of CUA employees Ms. McNeil and Ms. Jackson). Ms. McNeil testified that Child has been in foster care for approximately two years. *Id.* at 125. Ms. McNeil stated that Father has been in prison since the time of his arrest, and he is subject to a stay-away order. *Id.* at 118.

Ms. Jackson confirmed Child has been in foster care since 2021. *Id.* at 140. Ms. Jackson testified Child is "very bonded" with her foster parent, who ensures Child's physical, medical and emotional needs are met. *Id.* at 141-42; *id.* at 143 ("[Child] looks to her resource parent for love, support, nurturing, everything."). Child is in placement with a sibling, and the siblings are bonded. *Id.* at 142. According to Ms. Jackson, Child's foster parent

ensures that Child participates in sibling visits with the other siblings in care. *Id.* at 142; *see also id.* (indicating sibling visits occur at least every four months). Ms. Jackson opined that Child would not suffer irreparable harm if the court terminated Father's rights, but Child would be harmed if she were removed from the foster home. *Id.* at 143. Additionally, Ms. Jackson described Child's foster home as a pre-adoptive home. *Id.* at 152.

The clear and convincing evidence of record supports the juvenile court's finding that termination of Father's parental rights would serve Child's best interest. The credited testimony reflects that, though Child had a bond with Father for the first 11 months of her life, Child has had no contact with Father for approximately two years. In that time, Child developed a strong, beneficial bond with her foster family. The juvenile court was within its discretion to prioritize Child's need for safety, security, and permanency. Accordingly, we conclude the juvenile court did not err or abuse its discretion by terminating Father's parental rights.

In his third issue, Father challenges the juvenile court's order changing Child's permanency goal from reunification to adoption. *Anders* Brief at 12-13. As we have upheld the termination of Father's parental rights, this issue is moot. *See Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) (father's challenge to child's goal change was moot after this Court affirmed the orphans' court's termination decrees).

In his fourth issue, Father contends he was denied due process. He raises several sub-issues in support of his claim, some of which we address together. Father claims the juvenile court lacked jurisdiction over the case because he was not served with the termination petition or exhibits. *Anders* Brief at 9-10.

Father raised this argument during the termination hearing.[12] N.T., 8/24/23, at 97. Father argued the court could not adjudicate Child without providing notice to both parents. The juvenile court explained:

> So, [Father], we are not here for an adjudication. We are here for a termination of parental rights. If you recall, back in March of this year with you and [M]other present in court, the assigned [s]olicitor provided both you and [M]other with termination petitions. And I believe they also, [] after you and [M]other were found guilty [in the criminal cases], mailed amended petitions with the grounds that included your convictions.

*Id.* DHS Exhibits 1 and 1A confirm that DHS provided Father with notice of the hearing, and the termination petition and amended termination petition were attached to the notices.

Further, regarding Father's assertion that he did not receive any of the documents offered as exhibits, Counsel confirmed she mailed the documents

---

[12] Counsel placed Father's objections on the record during the termination hearing. *See* N.T., 8/24/23, at 94-95. Father then stated that he did not feel Counsel's explanation was sufficient. *Id.* at 96. The juvenile court permitted Father to provide clarification. *Id.* at 96-97 ("I don't normally do this, but I am going to give [F]ather an opportunity to add to your argument whatever he determines he feels was insufficiently articulated by you, so nothing is lost on the record.").

to Father in prison. *Id.* at 110-13. Father again denied receiving any documents, to which Counsel stated, "I know that you referenced some of the transcripts, some of the Notes of Testimony in our last conversation...." *Id.* at 112-13. The juvenile court found Father's testimony on this matter incredible. *Id.* at 169. Therefore, Father's allegations are belied by the record.

Next, Father argues the juvenile court violated his due process rights by denying his oral motion for recusal. *Anders* Brief at 10.[13]

A party seeking recusal must "produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Dip*, 221 A.3d 201, 206 (Pa. Super. 2019) (citation omitted). In considering a recusal request, a judge must "make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome." *Id.* (citation omitted). Then, the judge must consider whether his or her involvement creates the appearance of impropriety. *See id.* "Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice,

---

[13] Father also contends the juvenile court improperly denied his motion to proceed *pro se*. *See* Anders Brief at 10. Father did not specifically request to proceed *pro se* during the termination hearing. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). From our review of the transcripts, it appears any such request arises from Father's allegation that Counsel was ineffective. We address the ineffectiveness claim *infra*.

that decision will not be overruled on appeal but for an abuse of discretion."

*Id.* (citation omitted).

At the termination hearing, Counsel indicated that Father wished to challenge the juvenile court's impartiality. *See* N.T., 8/24/23, at 95-96. When the court allowed Father to speak on his own behalf, he clarified his argument:

> [O]ne time in March 2021 … you explained to … [DHS] that you would not allow them … [to] go into our home to find out if we have a baby. And then you turned around a few months later and then gave them permission … to … [] go into our house for … [Child].

*Id.* at 98. The juvenile court explained DHS had subsequently obtained an order for protective custody after Father's arrest by U.S. Marshals. *Id.* at 98-99. Further, the court emphasized it would render a "decision based on the facts provided to me today, not based on the history of the case." *Id.* at 103; *see also id.* (denying Father's request for recusal).

We discern no abuse of discretion in the juvenile court's denial of Father's recusal motion. Father failed to offer evidence establishing the court's bias, prejudice, or unfairness. *See Dip*, 221 A.3d at 206. Thus, Father is not entitled to relief on this claim.

Additionally, Father asserts a due-process violation based upon the separate termination hearings for Mother and Father. *Anders* Brief at 11. Counsel states she "is not aware of any right arising from the 14th Amendment

which would require that the parents' respective hearings need to be conducted at the same time." ***Id.***

During the termination hearing, Father suggested his right to be "tried" with Mother derives from Islamic law. ***See*** N.T., 8/24/23, at 101. However, our review, like Counsel's, has revealed no Constitutional due process right to a joint termination hearing. As the law does not support Father's claim, it fails.

In his final claim, Father asserts the ineffective assistance of Counsel. ***Anders*** Brief at 11. Father argues a conflict of interest based on Counsel sharing an office with an attorney who had previously represented Father. ***Id.***; ***see also*** N.T., 8/24/23, at 100.

As this Court has recognized,

> [t]he right to counsel in parental termination cases is the right to effective assistance of counsel even though the case is civil in nature. However, this right is more limited than that in criminal cases, as claims of ineffective assistance of counsel must be raised on direct appeal. We then review the record as a whole to determine whether or not the parties received a fundamentally fair hearing; a finding that counsel was ineffective is made only if the parent demonstrates that counsel's ineffectiveness was the cause of the decree of termination.

***In the Interest of J.T.***, 983 A.2d 771, 774-75 (Pa. Super. 2009) (citations and quotation marks omitted).

Father asserts: 1) Child's nine siblings were illegally removed from the home; 2) the instant case was closed, and therefore, DHS did not need to know Child's whereabouts at the time DHS sought an order of protective

custody; 3) the termination of his parental rights to Child was an act of retaliation; and 4) DHS's allegations against him constitute slander. **See** Answer, 12/15/23, at 1-4. Father's bald allegations and generalized complaints provide no basis for relief.[14] Father has failed to establish Counsel's alleged ineffectiveness caused the termination decree.

Based upon the foregoing, we agree with Counsel's assessment that Father's appeal is frivolous. Further, Father failed to raise any issues of merit in his answer. We therefore grant Counsel permission to withdraw from her representation of Father, and affirm the decree terminating Father's parental rights to Child and the order changing Child's permanency goal to adoption.

Application to withdraw granted. Decree and order affirmed.

_____

[14] Because Father filed a *pro se* answer, we need not undertake a thorough independent review of the record:

> By filing a *pro se* response, as in this case, or hiring private counsel, the appellant has essentially filed an advocate's brief. It is well-settled that when an advocate's brief has been filed on behalf of the appellant, our Court is limited to examining only those issues raised and developed in the brief. We do not act as, and are forbidden from acting as, appellant's counsel. Accordingly, our independent review is logically limited in the situation presented herein. If we conduct an independent review of the entire record, and conclude that there are no non-frivolous issues to be found anywhere therein, we have rendered the appellant's right to proceed *pro se* or to hire counsel, meaningless.

**Bennett**, 124 A.3d at 333.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/29/2024