J-S11031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.H.-N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.N., MOTHER | : | |
| | : | No. 2779 EDA 2023 |

Appeal from the Order Entered October 3, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000776-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: J.J.H.-N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.N., MOTHER | : | |
| | : | No. 2780 EDA 2023 |

Appeal from the Decree Entered October 3, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000267-2023

BEFORE:   BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JULY 24, 2024**

J.N. ("Mother") appeals from the October 3, 2023 decree entered in the Court of Common Pleas of Philadelphia County, Juvenile Division ("trial court"), which involuntary terminated her parental rights to her son, J.H.-N. ("Child"), born in July 2021.  Mother also appeals from the order of that same

_____

[*] Retired Senior Judge assigned to the Superior Court.

date, which changed the permanent placement goal for Child from reunification to adoption. After careful review, we affirm.

In July 2021, the Department of Human Services of the City of Philadelphia ("DHS") received a report from the hospital where Child was born that Mother and Child tested positive for PCP. On July 30, 2021, the trial court granted DHS's application for shelter care, and on August 9, 2021, Child was placed with his current foster mother. A dependency petition was filed on August 5, 2021, and was subject to several continuances including for a paternity test to confirm that J.H. ("Father") is Child's father and based upon Father's brief incarceration. Finally, after a hearing on February 17, 2022, Child was adjudicated dependent.

Permanency review hearings were held on May 5, 2022, September 1, 2022, December 1, 2022, February 21, 2023, May 9, 2023, and August 1, 2023. Mother was provided with weekly visitation with Child throughout the duration of the case, with the visits increasing from one to two hours after the December 1, 2022 hearing but remaining supervised at the office of the Community Umbrella Agency ("CUA") throughout the case.

On July 21, 2023, DHS filed a petition to terminate Mother's parental rights to Child pursuant to Section 2511(a)(1), (2), (5), and (8) of the Adoption Act, as well as subsection (b) of that same provision. 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), (b). On that same date, DHS also filed a petition to change Child's permanency goal to adoption and a petition to terminate Father's parental rights. A hearing was held on the termination petitions and

the goal change petition on October 3, 2023, at which the CUA case manager,

Kate Mensinger, and Father testified.[1]

_____

[1] Child was represented by a guardian *ad litem* ("GAL") in the dependency matter, **see** 42 Pa.C.S. § 6311(a) (requiring the appointment of a GAL in dependency proceedings), and the GAL continued to represent Child through the October 3, 2013 hearing on the termination and goal change petitions. There is no separate order reappointing the GAL to represent Child in the adoption docket created following the filing of the termination petition, no separate counsel entered an appearance on behalf of Child in that matter, and the hearing transcript indicates that the GAL only served in that role and not also as Child's legal interests counsel. **See** N.T., 10/3/23, at 2.

Pursuant to Section 2313(a) of the Adoption Act, 23 Pa.C.S. § 2313(a), the trial court is required "to appoint counsel to serve the critical role of a child's attorney, zealously advocating for the legal interests of the child who otherwise would be denied a voice in the termination of parental rights proceedings." **In re Adoption of K.M.G.**, 240 A.3d 1218, 1233-34 (Pa. 2020); **see also In re T.S.**, 192 A.3d 1080, 1092 (Pa. 2018). The question of whether legal interests counsel was appointed for the child is subject to our *sua sponte* review even where not raised by the parties. **K.M.G.**, 240 A.3d at 1235; **see also id.** at 1235-36 (appellate court should also review *sua sponte* whether child's best and legal interests conflict where trial court appoints single attorney to jointly serve as GAL and legal interests counsel). However, our Supreme Court has recognized that where the child in question is "very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests," and therefore Section 2313(a) is satisfied where a GAL represents the child's best interests in the proceedings. **T.S.**, 192 A.3d at 1092-93; **see also id.** at 1090 (where the child is non-communicative and a GAL is advocating for the child's best interests, "Section 2313(a) does not require the appointment of another lawyer to . . . advance[e] the child's unknowable preference").

Here, the evidence reflects that not only was Child very young at the time of the termination hearing—two years and three months old—but there was also evidence showing that Child was pre-verbal. **See** N.T., 10/3/23, at 24 (stating that Child's speech was delayed and speech services would be implemented). Therefore, in these circumstances and in accordance with **T.S.**, we conclude that the trial court did not violate Section 2313(a) by not appointing legal interests counsel for Child, and Child was properly represented at the hearing solely by his GAL. Nevertheless, we remind the trial court of its obligation
*(Footnote Continued Next Page)*

Mensinger testified that single case plan objectives were established for Mother, requiring her to (1) submit to random drug screens and test negatively for illegal substances, (2) complete a drug and alcohol assessment and follow through with substance abuse treatment as recommended, (3) participate in behavioral health treatment and provide a treatment plan to CUA, (4) obtain suitable and stable housing and provide CUA with a copy of her lease, (5) complete a parenting class, and (5) attend visitation with Child. N.T., 10/3/23, at 8-9, 12. Mensinger stated that she generally communicated the single case plan objectives to Mother at each supervised visit with Child. *Id.* at 14.

Mensinger testified that Mother did not render consistently negative drug screens during the course of the case. *Id.* at 9. Mensinger reviewed several recent drug screen results at the hearing, which showed that Mother tested positive for PCP on September 12, 2023 and had negative results on September 26, 2023. *Id.* at 10, 31. Mensinger stated that Mother has had an "ongoing issue" with PCP since Child's removal. *Id.* at 25. Mother engaged in substance abuse treatment beginning in April 2023, with only sporadic attendance before September 8, 2023, and more regular attendance since that date. *Id.* at 11. Mother participated in behavioral health treatment with

_____

under Section 2313(a) to appoint legal interests counsel for children in contested termination proceedings.

a provider with whom she had "a long-standing engagement" from "prior to the case opening." *Id.* at 12.

Mensinger testified that Mother's housing status was "unclear"; she has provided documentation indicating that she lives with her sister, but approximately two weeks ago she indicated that she stays with Father "a lot of the time." *Id.* at 12, 31. During his testimony, Father stated that Mother spends "half the time" with him and half the time with her sister but that his "door is open to" Mother staying with him for more time. *Id.* at 41. Mother was not employed as of the date of the hearing but instead received Supplemental Security Income. *Id.* at 13. Mother completed parenting classes and provided CUA with a certificate of her attendance. *Id.* at 12-13.

Mensinger testified that Mother was "relatively" consistent in attending weekly visitation sessions with Child. *Id.* at 13. Mensinger stated that Mother may have only attended five out of the normal twelve sessions that would be held between court hearings, but since February 2023, Mother's visits have improved such that she was only missing one or two out of every twelve visits. *Id.* at 14, 25. The visits generally go well; Mother appropriately parents Child and brings him toys and snacks. *Id.* at 15, 31. However, the visits have never progressed to unsupervised. *Id.* at 25.

Mensinger stated that Mother's compliance with the case plan objectives was necessary to effectuate her reunification with Child, but overall her compliance was minimal. *Id.* at 27. Mensinger testified that her greatest concern with respect to reunification is Mother's drug use:

[T]here's been a consistency through the life of the case for testing positive for either PCP or cocaine, and it's been an ongoing issue for the life of the case[. Child] is not at an age where he can protect himself from [. . . M]other [if she were] under the influence.

*Id.* at 14-15. Mensinger also noted Mother's unsettled housing situation as being a significant concern that negated any potential reunification. *Id.* at 15, 31.

Regarding Mother's relationship with Child, Mensinger testified that Child initially would cry hysterically when left with Mother during visits, but he has grown more comfortable with her over time. *Id.* at 15-16, 26. However, while visits between Mother and Child go well, Mensinger stated there does not appear to be a parent-child bond between the two. *Id.* at 15, 22. Rather, there is more of a "familiar bond," where Child "knows he comes once a week to [CUA's] office[, h]e gets snacks[, h]e plays with toys[,] and then he goes." *Id.* at 22, 26. Child is not upset at the end of visits and will raise his arms to be picked up without hesitation when the CUA worker signals that the visit is concluding, usually without engaging in any goodbye with Mother. *Id.* at 16, 26; *see also id.* at 22 ("[Child] doesn't appear to have an attachment on departure or arrival for the visits.").

On the other hand, Mensinger stated that she has viewed Child in the foster mother's home, and they have a strong parent-child bond. *Id.* at 22-23. Child "hang[s] all over" the foster mother during visits and runs after her whenever she moves around the home. *Id.* at 23. Child looks to the foster mother, who is interested in adopting Child, for love, protection, and support,

and Child is safe in that home. *Id.* at 23-25. The foster mother cares for all of his Child's needs, including his medical and dental appointments, and she is pursuing speech services based upon his delayed speech. *Id.* at 23-24. Mensinger thus opined that Child would not suffer irreparable harm if Mother's parental rights were terminated because his visits with her are just "something he does once a week," and Mother is "not a permanent fixture in his life," unlike the foster mother. *Id.*

Following the hearing, the trial court issued a decree terminating Mother's parental rights and an order granting the goal change petition. Mother filed timely notices of appeal.[2] These appeals were then consolidated *sua sponte* by this Court.

Mother raises three issues on appeal:

1. Whether the trial court committed reversible error, when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the [A]doption [A]ct, 23 [Pa.C.S.] § 2511(a).

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of the

_____

[2] Mother filed a concise statements of errors complained of on appeal concurrently with her notice of appeal, as required by Pa.R.A.P. 1925(a)(2)(i), and the trial court issued a consolidated opinion addressing the issues raised at both appeals.

The trial court also granted the termination petition as to Father, and Father appealed from the decree terminating his parental rights and the goal change order. Those appeals are pending before this Court at Nos. 2785 EDA 2023 and 2786 EDA 2023.

[C]hild as required by the [A]doption [A]ct, 23 [Pa.C.S.] § 2511(b).

3. Whether the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a genuine interests and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with her [C]hild.

Mother's Brief at 4.

Mother's first two issues address the decree terminating her parental rights to Child. We begin our analysis with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In the Interest of J.R.R.*, 229 A.3d 8, 11 (Pa. Super. 2020) (quoting *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013)).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In the Interest of L.W.*, 267 A.3d 517, 522 (Pa. Super. 2021). The clear and convincing evidence standard is defined as "testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act. "Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination[.]" *In re Adoption of C.M.*, 255 A.3d 343, 359 (Pa. 2021); *see* 23 Pa.C.S. § 2511(a)(1)-(11). If the trial court determines the petitioner established grounds for termination under Section 2511(a) by clear and convincing evidence, the court then must proceed to assess the petition under subsection (b), which focuses on the child's needs and welfare. *T.S.M.*, 71 A.3d at 267.

Here, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (8), and subsection (b). However, this Court may affirm the court's decision to terminate if we agree with its determination concerning any one subsection of Section 2511(a), as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We focus our analysis on Section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \*          \*          \*
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*          \*          \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  . . .

23 Pa.C.S. § 2511(a)(2), (b).

Under Section 2511(a)(2), "the moving party must prove by clear and convincing evidence that there is (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of L.A.K.*, 265 A.3d 580, 600 (Pa. 2021).

[S]ubsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control[,] or subsistence necessary for his physical or mental well-being.  Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect.  This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it.

*In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010) (citation and emphasis omitted).

The grounds for termination under Section 2511(a)(2) are not limited to affirmative misconduct, but also include refusal and parental incapacity that

cannot be remedied. ***Id.***; ***In re Adoption of A.H.***, 247 A.3d 439, 443 (Pa. Super. 2021). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." ***A.H.***, 247 A.3d at 443. "A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." ***Z.P.***, 994 A.2d at 1118 (citation omitted). "[W]hen a parent has demonstrated a continued inability to conduct [her] life in a fashion that would provide a safe environment for a child, whether that child is living with the parent or not, and the behavior of the parent is irremediable as supported by clear and competent evidence, the termination of parental rights is justified." ***Id.*** (citation omitted).

Mother argues that the trial court's decision to terminate her parental rights under Section 2511(a)(2) was not supported where there was "no affirmative evidence to suggest that she refused to parent" Child, "attempted to or actually relinquished her parental rights to" Child, "or failed to perform her parental duties." Mother's Brief at 10-11. Mother notes testimony demonstrating her enrollment in drug and alcohol counseling and mental health treatment, as well as her positive visits with Child and completion of a parenting class. Mother argues that evidence of her past incapacity is insufficient when she "has the present capacity to care for" Child. ***Id.*** at 12.

In explaining its rationale for terminating Mother's parental rights under Section 2511(a)(2), the trial court found the testimony of Mensinger, the CUA case manager, to be credible regarding Mother. Trial Court Opinion, 1/22/24,

at 17; N.T., 10/3/23, at 51-52. The court noted that Mother was repeatedly reminded of her single case plan objectives, which remained consistent throughout the case. Trial Court Opinion, 1/22/24, at 17. The court stated that Mother has complied with some of her single case plan objectives, yet she continued to test positive for illegal drugs, including PCP, during her random drug screens throughout the life of the case. *Id.* The court found that, despite being repeatedly advised of "the seriousness of abstaining from illegal drug use," she continued to test positive, "indicat[ing] to the [c]ourt that nothing has changed in regard to Mother's drug use issues and continued use of PCP." *Id.* at 18. The trial court thus "found that Mother does not have the ability to parent [Child] because of her illegal drug use." *Id.*

The trial court further found that Mother did not comply with her objective to obtain suitable and stable housing for Child. *Id.* The Court stated that its "concerns over Mother's housing situation" also animated its decision to terminate her parental rights. *Id.*

Upon review, we find that the trial court's findings are supported by the evidence and consistent with our caselaw. While Mother argues that her parental incapacity was only in the past, the record belies this assertion. The primary issue that resulted in Child's removal from Mother at the time of birth was her use of PCP while Child was *in utero*. Mother was never able to remedy the cause of the incapacity as she returned positive drug test results throughout the case, including a positive PCP test three weeks prior to the termination hearing. N.T., 10/3/23, at 9-10, 14-15, 25, 31; *see also* Trial

- 12 -

Court Opinion, 1/22/24, at 17-18 (recounting prior positive drug screens addressed at earlier permanency review hearings). Mother also had not demonstrated that she had obtained suitable housing that would allow for reunification with Child due to her sometimes living at her sister's home and sometimes with Father. N.T., 10/3/23, at 12, 31, 41. Therefore, regardless of Mother's success in meeting some of her single case plan objectives, her conduct demonstrates that she has not attained the sobriety and stability necessary to allow her to parent Child on a full-time basis. Based on the clear and convincing evidence showing that there was "no reasonable prospect for" reunification due to Mother's "continued inability to conduct [her] life in a fashion that would provide a safe environment for" Child, **Z.P.**, 994 A.2d at 1117-18 (citations omitted), the trial court did not err or abuse its discretion in ruling that termination was appropriate under Section 2511(a)(2).

We therefore turn to the trial court's finding that termination of Mother's parental rights best served Child's "developmental, physical and emotional needs and welfare" under Section 2511(b). 23 Pa.C.S. § 2511(b). "The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability." **T.S.M.**, 71 A.3d at 267 (citation and quotation marks omitted); **see also In the Interest of K.T.**, 296 A.3d 1085, 1106 (Pa. 2023). "Notably, courts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent." **K.T.**, 296 A.3d at 1105.

Our Supreme Court has consistently mandated that any Section 2511(b) analysis "requires consideration of the emotional bonds between the parent and child." **T.S.M.**, 71 A.3d at 267 (citing **In re E.M.**, 620 A.2d 481 (Pa. 1993)). Specifically, "[c]ourts must determine whether the trauma caused by breaking [the parent-child] bond is outweighed by the benefit of moving the child toward a permanent home." **Id**. at 253 (cleaned up). The recognized threshold for this required bond inquiry is whether termination will sever a "necessary and beneficial relationship," causing the child to suffer "'extreme emotional consequences' or significant, irreparable harm." **K.T.**, 296 A.3d at 1109-10 (quoting **E.M.**, 620 A.2d at 484).

"[A] court conducting the Section 2511(b) needs and welfare analysis must consider more than proof of an adverse or detrimental impact from severance of the parental bond." **Id.** at 1113. Our Supreme Court has explained that the court should consider, as appropriate, the child's need for permanency and length of time in foster care, the child's placement in a pre-adoptive home and whether there is a bond with the foster parents, and whether the foster home meets the child's developmental, physical, and emotional needs. **Id.** Nonetheless, there is no "exhaustive list" of factors that must be considered by a trial court in this context. **Id.** at 1113 n.28.

Mother argues that DHS did not establish that she lacks a bond with Child or that the bond is not necessary and beneficial where the testimony showed that she had a positive presence in Child's life as evidenced by their loving, affectionate relationship during visits and engaging in various activities

together. In light of the improvement of their relationship over the life of the case, Mother contends that the trial court erred by not fully considering the developing bond and by "terminat[ing] Mother's parental rights without providing [her] the opportunity to further bond with [C]hild." Mother's Brief at 16.

The trial court addressed the Section 2511(b) analysis both at the conclusion of the hearing and in its opinion, and we quote the discussion in the opinion which mirrors the court's oral findings:

> The [c]ourt found credible the testimony from Ms. Mensinger that there is no parent-child bond between Mother and [Child]. According to Ms. Mensinger, Mother and [Child] have more of familiarity between them as [Child] has gotten to know Mother from the visits but there is no attachment to Mother and [Child] does not have any problem leaving Mother at the end of the visits. The [c]ourt heard testimony as to the strong relationship between [Child] with the current caregiver, and that all [Child's] basic needs are being met and [Child] looks to his caregiver for love, protection, and support. [Child] has been with the caregiver since August 2021[,] and it is a pre-adoptive home. Ms. Mensinger testified that termination of parental rights would not have a detrimental effect or cause any irreparable harm on the developmental, physical[,] and emotional needs of [Child].
>
> The [c]ourt found that there is not a parental bond between Mother and [Child]. The [c]ourt also found that [Child] has a very strong, parental bond with his caregiver, the caregiver is a pre-adoptive home, and the impact of termination did not outweigh the benefit of moving [Child] toward a permanent adoptive home. The pre-adoptive home is meeting [Child's] developmental, physical, and emotional needs, including [Child's] need of love, comfort, security, safety, and stability. Consequently, the termination of Mother's parental rights would be in the best interest of the child pursuant to [Section] 2511(b).
>
> There was evidence that Mother demonstrated a genuine interest and an effort to maintain a parent-child relationship with [Child],

and the [c]ourt does not doubt that Mother loves [Child]. However, Mother has not been able to prove to the [c]ourt, despite many opportunities, that she can overcame her drug use issues that have been present throughout the life of this case. The [c]ourt considered all the evidence and testimony before it as well as the permanency interest of [Child] in making its decision.

Based upon the testimony and evidence presented at the . . . [h]earing, the [c]ourt found clear and convincing evidence . . . that the termination of Mother's parental rights would be in the best interest of the child pursuant to [Section] 2511(b).

Trial Court Opinion, 1/22/24, at 19-21 (record citation omitted); **see also** N.T., 10/3/23, at 52-55.

The trial court's findings and conclusions are amply supported by the record. Mensinger's testimony, which the trial court found to be credible, established that, despite the affection between Mother and Child, Child does not look to Mother for parental support, is not upset when leaving her, and they share a "familiar bond" rather than a parent-child bond. N.T., 10/3/23, at 15-16, 22, 26. Mensinger's testimony further showed that Child has a strong parental bond with his foster mother, with whom he has lived for almost his entire life and who is a pre-adoptive resource, and she meets his developmental, physical, and emotional needs. **Id.** at 22-25.

The trial court was within its discretion to "equally emphasize the safety needs of" Child in its Section 2511(b) analysis, **see Interest of M.E.**, 283 A.3d 820, 837 (Pa. Super. 2022) (citation omitted), where Mother demonstrated, by her continued drug use throughout the case, that she was incapable of providing a safe and secure home for Child. Moreover, the court appropriately rejected Mother's request for more time to develop a stronger

bond with Child where there was no reasonable prospect for an imminent reunification with Child. **See K.T.**, 296 A.3d at 1107-08 (noting that federal law requires agencies to move for termination when child has been in foster care for fifteen of prior twenty-two months and trial courts "must keep the ticking clock of childhood ever in mind" and ensure that dependent children find permanency "in a timely fashion") (citation omitted).

We therefore conclude that Mother has not shown grounds to overturn the trial court's decision to terminate her parental rights under Section 2511(a)(2) and (b). In Mother's final issue, she challenges the change of Child's permanent placement goal from reunification to adoption. Given our decision to affirm the trial court's termination decree, any challenge to the goal change order is moot. **See A.H.**, 247 A.3d at 446 ("[T]he effect of our decision to affirm the [trial] court's termination decree necessarily renders moot the dependency court's decision to change [a c]hild's goal to adoption."); **see also In the Interest of A.R.**, 311 A.3d 1105, 1114 (Pa. Super. 2023); **In the Interest of A.M.**, 256 A.3d 1263, 1272 (Pa. Super. 2021). We accordingly also affirm the trial court's goal change order. **A.R.**, 311 A.3d at 1114; **A.M.**, 256 A.3d at 1272-73.

Decree affirmed. Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/24/2024