J-S21044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.T.J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 71 EDA 2024 |

Appeal from the Order Entered December 19, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000157-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: D.T.J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 72 EDA 2024 |

Appeal from the Decree Entered December 19, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000710-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: D.D.J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 73 EDA 2024 |

Appeal from the Order Entered December 19, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000159-2016

J-S21044-24

| | | |
|---|---|---|
| IN THE INTEREST OF: D.D.J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 74 EDA 2024 |

Appeal from the Decree Entered December 19, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000711-2019

BEFORE: LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED AUGUST 7, 2024**

D.H. (Mother) appeals from the decrees terminating her parental rights to her minor sons, D.D.J.F. (born in January 2015) and D.T.J.F. (born in December 2015) (collectively, Children), and the orders changing Children's permanency goals from reunification to adoption. Mother's appointed counsel, Harry R. Levin, Esquire (Counsel), has also filed a petition to withdraw as counsel and an accompanying **Anders** brief.[1] We grant Counsel's petition to withdraw and affirm the juvenile court's decrees and orders.

As summarized by the juvenile court,

[o]n December 24, 2015, [the Philadelphia Department of Human Services (DHS)] received a General Protective Services ("GPS") report which alleged that on December 20, 2015, Mother gave birth to D.T.J.F. at Temple University Hospital and [D.T.J.F.] was

---

[1] **See Anders v. California**, 386 U.S. 738 (1967); **see also In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (explaining that the **Anders** procedure for withdrawal of court-appointed counsel has been extended to appeals involving termination of parental rights).

- 2 -

discharged from [the] hospital into Mother's care. [DHS filed a dependency petition for the Children in January 2016, alleging that Mother and D.F. (Father)[2] both had histories of mental illness and drug and alcohol use. The petition further alleged that Mother was transient and lacked proper parenting skills.] On March 16, an adjudicatory hearing was held for Children, and they were adjudicated dependent. Legal and physical custody remained with Mother, and DHS was ordered to supervise their care. Children were adjudicated [dependent] due to the conduct of Mother failing to protect them or placing them at a high risk. There was also inadequate shelter, substance abuse[,] and mental health concerns regarding Mother. The allegations were determined to be valid….

In September of 2016, Mother fled from Philadelphia with Children and did not make her whereabouts known to [the Community Umbrella Agency (CUA)]. On October 5, 2016, a permanency review hearing was held and the court ordered DHS to obtain an order of protective custody ("OPC") for Children once they were located. On August 10, 2017, DHS learned that Children were in Philadelphia in the care of [their] paternal grandmother [(Grandmother)]…. An OPC was obtained for Children[,] and they remained in the care of [Grandmother].

Juvenile Court Opinion, 3/14/24, at 1-2 (citations to record omitted; some capitalization modified); *see also In the Interest of D.T.J.F.*, 283 A.3d 351, 1770-1773 EDA 2021 (Pa. Super. filed July 8, 2022) (unpublished memorandum at 3) ("[The juvenile] court transferred legal custody of the Children to DHS and physical custody of the Children to Grandmother … because Mother had absconded with them for approximately a year.").

Subsequently, at the dependency dockets, the juvenile court found aggravated circumstances existed based on the involuntary termination of

---

[2] Father is not a party to the instant appeal.

Mother's and Father's parental rights to Children's older siblings. *In the Interest of D.T.J.F.*, 283 A.3d 351 (unpublished memorandum at 3). In September 2019, DHS filed petitions for termination and to change Children's permanency goals to adoption. DHS later withdrew the petitions because Mother had enrolled in therapy. *See id.* (unpublished memorandum at 3, 5).

On August 4, 2021, DHS filed additional petitions for termination and to change Children's permanency goals to adoption. This Court summarized the relevant testimony elicited during the termination hearing:[3]

> [Tania Cody (Cody), the CUA case manager,] testified that CUA had assigned Mother the following objectives for reunification with the Children: maintain suitable housing and employment, submit to a Parenting Capacity Evaluation ("PCE"), participate in mental health services, and participate in visitation with Children. Cody agreed that Mother had obtained stable housing, had completed the PCE, and had demonstrated some employment history. Cody also acknowledged that Mother has a younger child in her care who has never been adjudicated dependent.
>
> Regarding visitation, Cody testified that Grandmother prevented Mother from visiting the Children at times because Grandmother "has difficulty with her communication with the case aid, who is the person who transports the Children and supervises the visits." Cody has had to intervene to speak with Grandmother about her responsibility regarding the visits. Cody relayed that the trial court has also admonished Grandmother, who is not fully cooperative. Cody testified that more recently, visits have not taken place due to the Children's and Mother's sickness. She rated Mother's compliance with her visitation objective as "minimal." Cody said that since the last court date, there have been telephone visits between Mother and Children, but no video-

---

[3] This Court adeptly summarized the testimony of several witnesses. *See In the Interest of D.T.J.F.*, 283 A.3d 351 (unpublished memorandum at 3-9). We limit our recitation to the testimony most relevant to the instant appeal.

conferencing visits, because Grandmother does not have the capacity to facilitate them.

Cody testified that Mother's lack of mental health treatment has been a concern throughout the life of the case and that Mother's mental health is still of concern. Cody stated that the PCE recommended Mother complete a psychiatric evaluation along with individual therapy, but that Mother never had the psychiatric evaluation. Cody testified that Mother did not engage in any mental health treatment between 2016, when she took part in mental health, drug and alcohol treatment …, and 2019, when she completed an intake at Alternative Community Services. Cody testified that Mother told [Cody] that meanwhile, in 2018, there was an incident in which Mother admitted herself to a hospital for mental health treatment, had an altercation with a security guard, attempted to assault a police officer, and threatened to kill the officer's family.

According to Cody's testimony, Mother never followed up with Alternative Community Services following her 2019 intake[,] but finally resumed therapy in 2020 at Dr. Mary Berge & Associates. … Cody learned after the 2020 [termination and permanency review hearing] that Mother had attended only three of her therapy sessions with [Dr. Mary Berge & Associates] and had missed four, and Mother was discharged from Dr. Mary Berge & Associates that same year. Ultimately, Cody opined that "the mental health component of this case," which was "the very core component as to why the [C]hildren … were removed in the first place," "has not been addressed and there has not been any consistency in that matter."

*Id.* (unpublished memorandum at 3-5) (citations to record and some brackets omitted).

Mother testified on her own behalf during the hearing. Mother testified that "Grandmother denied her video calls with the [C]hildren." *Id.* (unpublished memorandum at 8). Concerning her mental health treatment, this Court summarized Mother's testimony as follows:

Mother acknowledged that she was discharged from therapy with Dr. Mary Berge & Associates in 2020 due to her absences, but said she began going to therapy at Family Therapy Counseling in December 2020. Mother did not bring any documentation of her treatment at Family Therapy Counseling to the hearing. According to Mother, her therapist at Family Therapy Counseling had called Cody twice, and Cody had never responded or tried to obtain Mother's records. When asked about her current attendance at Family Therapy Counseling, Mother responded,

My last visit to therapy was in June. I know its [*sic*] August, but in June, I went to therapy one last time, after court, because I know of – I don't know, grew into a reluctance, I guess, a reluctance to deal with just continuously being – like, I – I haven't been in control of my life since DHS entered it 11 years ago…. So, I will be honest, when I stopped going in June, my therapist actually didn't even really say she needed to see me. I've had three therapists diagnose me with adjustment disorder and nothing more. ...

Mother repeated that she has not gone to therapy since June 2021, but also said, "Yes, I am in treatment." When asked if she intended to "go back to therapy," Mother responded, "I am planning to go to counseling, not therapy." She said she wants "to take a different approach" and would "rather do talk counseling, if you will." She said that her understanding of the recommendation in the PCE was to engage in "a form of counseling, and if my counselor thought it necessary, which is in this recommendation as well—if the counselor made it necessary, then I would get a psychiatric evaluation." [Mother] stated it was never recommended, so she never [completed] the psychiatric evaluation.

*Id.* (unpublished memorandum at 8-9) (citations to record and some brackets omitted).

At the close of the August 2021 hearing, the juvenile court denied the termination and goal change petitions as to both Mother and Father. The court identified Children's placement goal as "return to parent or guardian."

Permanency Review Order, 8/4/21, at 1. At that time, the juvenile court reasoned that "none of the conditions that led to the Children's removal continue to exist, apart from concerns for Mother's mental health." Juvenile Court Opinion, 9/30/21, at 14. The juvenile court emphasized that Mother gave birth to another child since the start of DHS's involvement with Children, and Mother "competently parented the [youngest] child with no concerns from DHS for the past two years." *Id.* at 14-15. Further, the court rejected DHS's reliance on Mother's inconsistent engagement with mental health services. *Id.* at 15-16. Rather, the juvenile court found that Mother

> participated in at least some mental health services throughout the life of the case. She has engaged in mental health services with the Alternative Community Resources Program, participated in therapy with Dr. Mary Berge & Associates and is now currently receiving mental health services from Family Therapy Counseling and plans to continue.

*Id.* at 15. This Court affirmed the denial of the termination and goal change petitions. *See In the Interest of D.T.J.F.*, 283 A.3d 351.

Between October 2021 and January 2023, the juvenile court held several permanency review hearings. Mother did not attend any of those hearings. Following the January 9, 2023, permanency review hearing, the juvenile court found that DHS had made reasonable efforts to finalize Children's permanency plan. *See* Permanency Review Order, 1/9/23, at 1. The court continued the case to schedule a goal change hearing.

On April 24, 2023, DHS filed the termination and goal change petitions underlying the instant appeal. DHS requested termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b).

After multiple continuances, the juvenile court held a termination and goal change hearing on December 19, 2023. Mother did not attend the hearing, but her interests were represented by Counsel. Children were represented by legal counsel, as well as their guardian *ad litem* (GAL). The court heard testimony from Stephanie Reilly, CUA case manager. At the close of the hearing, the juvenile court granted DHS's petition and entered decrees terminating Mother's parental rights to Children pursuant to Section 2511(a)(1), (2), (5), (8), and (b). In separate orders, the juvenile court changed Children's permanency goals to adoption.

Mother filed timely notices of appeal from the termination decrees and goal change orders, as well as contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statements of errors complained of on appeal.[4] The juvenile court filed a Pa.R.A.P. 1925(a) opinion.

Before reaching the substantive merits of this appeal, we address Counsel's application to withdraw. **See In re S.M.B.**, 856 A.2d at 1237 (stating "this Court may not review the merits of the underlying issues until

_____

[4] This Court *sua sponte* consolidated Mother's appeals.

we address counsel's request to withdraw"). To withdraw from representation under ***Anders***, counsel must

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the ***Anders*** brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.

***In re J.D.H.***, 171 A.3d 903, 907 (Pa. Super. 2017) (citation and brackets omitted). Counsel must also "attach to [a] petition to withdraw a copy of the letter sent to the[] client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

> Additionally, a proper ***Anders*** brief must
>
> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

Instantly, Counsel filed a petition to withdraw stating he filed the ***Anders*** brief on the same date. Petition to Withdraw, 3/26/24, ¶ 2. In the ***Anders*** brief, Counsel stated he "made a conscientious examination of the record" and concluded Mother's appeal is frivolous. ***See Anders*** Brief at 12, 14. Counsel attached to the ***Anders*** brief a copy of the letter he sent to Mother, which advised Mother of her right to retain new counsel or proceed

*pro se* to raise any other issues she deems worthy of this Court's attention. *Id.*, Exhibit A.[5] Mother did not retain separate counsel or file a response raising additional issues.

Counsel's *Anders* brief (a) summarizes the procedural history and facts of the case with citations to the record; (b) identifies four issues that could arguably support Mother's appeal; and (c) explains why the appeal is frivolous. Accordingly, Counsel has complied with the requirements of *Anders* and *Santiago*. Thus, we "undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *In re S.M.B.*, 856 A.2d at 1237.

The *Anders* brief raises the following issues:

1. Whether the [juvenile] court committed reversible error when it involuntarily terminated Mother's parental rights and changed the goal [to] adoption where such determinations were not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8)[?]

2. Whether the [juvenile] court committed reversible error when it involuntarily terminated Mother's parental rights and changed the goal [to] adoption without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the child as required by the Adoption Act, 23 Pa.C.S.A. § 2511(b)[?]

3. Whether the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a

_____

[5] The letter does not contain proof of service. The certificate of service accompanying the petition to withdraw (to which the letter was originally attached) indicates Mother was served with the petition. Taken together, we conclude Counsel satisfied the notice requirements of *Anders*.

- 10 -

genuine and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with [Children?]

4. Whether Mother was unable to attend the termination hearing due to no fault of her own[?]

***Anders*** Brief at 6 (some capitalization modified).

We address Mother's first three claims together.[6]  First, Mother argues DHS failed to establish grounds for termination under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8), because she completed her reunification objectives.  ***See Anders*** Brief at 15-21.  Mother also challenges termination under Section 2511(b) and asserts she and Children share a bond.  ***See id.*** at 21-22.

Children's GAL counters the juvenile court properly terminated Mother's parental rights.  ***See generally*** GAL's Brief at 12-18.  Children's GAL highlights Mother's failure to visit with Children and address her mental health concerns.  ***Id.*** at 13-14.  The GAL also claims there is no parental bond between Mother and Children.  ***Id.*** at 17-18.

In considering Mother's claims, we recognize

appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence.  When applying this standard, the appellate court must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record.  Where the

---

[6] The ***Anders*** brief does not include a separate argument concerning the third claim.  ***See*** Pa.R.A.P. 2119(a) (providing the argument section of an appellate brief "shall be divided into as many parts as there are questions to be argued").  Because Mother's third claim challenges the termination decrees, we will address all three claims together.

orphans' court's factual findings are supported by the evidence, an appellate court may not disturb the orphans' court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, the orphans' court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which provides for a bifurcated analysis. First, the juvenile court "must focus on the parent's conduct" relative to the enumerated ground for termination set forth in 23 Pa.C.S.A. § 2511(a)(1)-(11). *Id.* at 830. If the court finds grounds for termination under Section 2511(a), it must then assess the evidence relative to the child's needs and welfare under Section 2511(b), "giving primary consideration to the developmental, physical and emotional needs and welfare of the child." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Here, the juvenile court terminated Mother's parental rights to Children under Section 2511(a)(1), (2), (5), (8), and (b). This Court may affirm the juvenile court's decision to terminate parental rights if we agree with its determination concerning any one subsection of Section 2511(a), as well as Section 2511(b). *See In re Adoption of C.D.R.*, 111 A.3d 1212, 1215 (Pa. Super. 2015). We address Section 2511(a)(2) and (b), which provide, in relevant part:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the condition and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. …

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of section 2511(a)(2), the petitioner must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without

- 13 -

essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted). Grounds for termination under this subsection "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.*; *see also In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010) ("[S]ubsection (a)(2) does not emphasize a parent's refusal to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control of subsistence necessary for his physical or mental well-being." (citation omitted)). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019).

Instantly, the juvenile court found that DHS established the statutory grounds for termination under subsection 2511(a)(2):

> The evidence established that "incapacity" and "refusal" under 2511(a)(2) existed given that Mother failed to demonstrate a concrete desire or ability to care for Children. Mother has failed to adequately complete her single case plan objectives throughout the life of this case. Despite having over six years to do so, Mother failed to successfully engage in mental health and individual treatment[;] she failed to maintain employment[;] and [she] failed to maintain stable and appropriate housing. There was no evidence of Mother's treatment status or mental health status. Mother failed to complete her domestic violence counseling and maintains contact with violent paramours. There was testimony that Mother was in a domestic violence situation with [Father] and had to flee Pennsylvania. Moreover, the evidence established that "neglect" existed given that Mother has failed to concern herself with [C]hildren's medical, education, and therapeutic needs. Mother's visitation schedule has been supervised at [DHS] for the

- 14 -

last six years. During Mother's supervised visits, Mother Facetimed … [F]ather[,] which raises a concern due to their history of domestic violence. Visits are at Children's discretion and they have declined visits with Mother for at least three months.

Juvenile Court Opinion, 3/12/24, at 8-9 (citations to record omitted).

During the December 19, 2023, termination hearing, DHS offered the testimony of Ms. Reilly, CUA's case manager. Ms. Reilly explained that DHS received a GPS report regarding Children. N.T., 12/19/23, at 7. Ms. Reilly testified that DHS was concerned with Mother's mental health since the start of its involvement with the family. *Id.* at 8. Mother's case plan objectives are: 1) visitation with Children; 2) verify housing and income; 3) comply with CUA, including domestic violence counseling; and 4) complete PCE recommendations, including individual therapy and completion of a psychiatric examination. *Id.* at 9.

Concerning Mother's mental health objective, Ms. Reilly testified that she received no documentation establishing Mother had completed treatment. *Id.* at 10. Ms. Reilly explained:

> [Mother] had provided me information regarding therapy. When I attempted to contact that therapist, they stated that they could confirm she was not currently … their client. I was also able to obtain documentation from Signature Health, which is where [Mother] had told me last year she was receiving mental health [treatment]. The only documentation I received from them was a documentation of an intake, but no further treatment.

*Id.* (paragraph break omitted). Ms. Reilly opined that Mother's failure to undergo mental health treatment is a barrier to reunification with Children. *Id.*

Ms. Reilly also testified she was unable to confirm that Mother completed domestic violence counseling. *Id.* at 11. Mother "forwarded [to Ms. Reilly] an email that she received that laid out domestic violence classes through Jewish Family Services." *Id.* at 22. However, neither Mother nor Jewish Family Services supplied confirmation that Mother completed the class. *Id.*

Further, Mother lives in Ohio. *Id.* at 12. DHS referred Mother to Ohio Children and Youth Services for a home assessment, but the Ohio agency was not able to complete an assessment. *Id.* Ms. Reilly acknowledged a video call with Mother during which Mother "walked through a residence that she states is her home in Ohio." *Id.* at 22. Mother also failed to provide evidence of employment. *Id.* at 12.

Regarding visitation, Ms. Reilly testified that following the denial of DHS's first termination petition, Mother's visits with Children were inconsistent. *Id.* at 17; *see also id.* ("[I]n September of [20]21, [Mother had] missed four consecutive visits, which resulted in a letter being sent to her stating … how important it is to visit consistently."). Ms. Reilly stated that Mother had participated in some virtual visits with Children. *Id.* at 22.

> The visits would consist of [C]hildren asking for things. Because Mother would actually [order food delivery] to [C]hildren, which was completely unnecessary, but she wanted to do that. So it became: What are you going to get for us today? That would be the quality of the visitation.

*Id.* Ms. Reilly testified that Children vocalized their opposition to participating in visits with Mother. *Id.* at 13. In particular, D.T.J.F. "had always been vocal

about not wanting to go on visits, but he would eventually comply…. Following some visits, [D.T.J.F.] would have bedwetting…." **Id.**

Our review confirms the juvenile court's findings are supported by the record, and free of legal error. We recognize that the juvenile court denied the August 2021 termination petitions because Mother had made some progress toward her mental health objectives. However, in the time following the denial of the previous petition, Mother's efforts have remained stagnant at best. Mother offered no documentation of her participation in mental health treatment or domestic violence counseling. Mother also moved out of state, where DHS was unable to assess her home. The record reflects that Mother's participation in visits with Children is inconsistent, and Children do not want to visit with Mother. Thus, we discern no error in the juvenile court's determination that DHS proved, by clear and convincing evidence, that termination of Mother's parental rights was warranted under Section 2511(a)(2).

We now turn to Section 2511(b). "The plain language of Section 2511(b) clearly mandates that, in assessing the petition to terminate parental rights, the primary consideration must be the child's developmental, physical and emotional needs and welfare." **In the Interest of K.T.**, 296 A.3d 1085, 1105 (Pa. 2023) (quotation marks omitted). This Court has repeatedly stated that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." **In re C.W.U., Jr.**, 33

A.3d 1, 6 (Pa. Super. 2011) (citation omitted). "[T]he court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Interest of: J.R.R.*, 229 A.3d 8, 12-13 (Pa. Super. 2020) (citation and quotation marks omitted).

> The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

*K.T.*, 296 A.3d at 1113 (footnote and citations omitted).

Regarding Children's best interests under Section 2511(b), the juvenile court found as follows:

> Children would not suffer irreparable emotional harm if Mother's parental rights were terminated. There was compelling testimony that [] Children would not suffer harm if Mother's parental rights were terminated[,] and Children were significantly bonded with their kinship caregiver[, Grandmother]…. Children refer to [Grandmother] as "Mother[,]" and look to her for care, support, and protection. [Grandmother] meets Children's educational and medical needs, and provides them with love, stability, and support. [C]hildren have been with [Grandmother] throughout their placement in out-of-home care. [Grandmother's] home is pre-adoptive, and it would be in [] Children's best interest that they are freed for adoption…. There are no signs of significant harm from Mother not visiting with Children over the past 90 days. Children have stated they want to remain with [G]randmother with a goal of adoption. In determining that termination would best serve the needs the welfare of [C]hildren, [the juvenile court] considered that Mother has not been able to meet [C]hildren's emotional, physical, and developmental needs for over six years prior to the termination hearing. …

Juvenile Court Opinion, 3/12/24, at 12-13 (citations to record omitted); **see also** N.T., 12/19/23, at 9, 15-16, 18.

The juvenile court's conclusion is amply supported by the record. Children have been in Grandmother's care for a majority of their lives. Grandmother provides for Children's educational and medical needs, and provides them with love, stability, safety, and support. Additionally, the GAL testified that Children wish to be adopted by Grandmother, and they do not want contact with Mother. **Id.** at 27-28. As the court's findings are supported by the record, and we otherwise discern no error, Mother is not entitled to relief. We affirm the orders terminating Mother's parental rights.[7]

In her final claim, Mother argues she did not attend the termination hearing because her bus trip was canceled. **Anders** Brief at 22.

Mother does not contest that she received adequate notice of the termination hearing. Nor does Mother assert that the juvenile court otherwise failed to afford her due process. Rather, as Counsel acknowledges in the **Anders** brief, Counsel informed the court at the start of the hearing that Mother's trip had been canceled. **See Anders** Brief at 22; **see also** N.T., 12/19/23, at 5. Counsel stated that notwithstanding Mother's absence, he

---

[7] Mother does not separately challenge the orders changing Children's permanency goal to adoption. We note that any such challenge would be moot in light of our disposition. **See Interest of D.R.-W.**, 227 A.3d 905, 917 (Pa. Super. 2020) (father's challenge to child's goal change was moot after this Court affirmed the orphans' court's termination decrees).

was ready to proceed with the hearing. N.T., 12/19/23, at 6. We also observe Counsel ably represented Mother's interests throughout the hearing. Thus, Mother's final claim merits no relief.

Based upon the foregoing, we affirm the juvenile court decrees terminating Mother's parental rights to Children, and the orders changing Children's permanency goal to adoption. Further, as our independent examination of the record reveals no other non-frivolous claims that Mother can raise, we grant Counsel permission to withdraw from his representation of Mother.

Petition to withdraw granted. Decrees and orders affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/07/2024